# Enforceability of Certain Agreements Between the Department of the Treasury and Government-Sponsored Enterprises

The Amended and Restated Senior Preferred Stock Purchase Agreements between the United States Department of the Treasury and the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, according to their terms, would create rights enforceable through actions brought in the United States Court of Federal Claims in accordance with the ordinary rules and procedures governing litigation in that Court.

September 26, 2008

LETTER OPINION FOR THE SECRETARY OF THE TREASURY

I am writing with regard to the Amended and Restated Senior Preferred Stock Purchase Agreements ("the Agreements") between the United States Department of the Treasury ("Treasury"), and the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, respectively (collectively the "Government-Sponsored Enterprises" or "GSEs"). You have asked for our view whether the Agreements create enforceable rights against Treasury for certain holders of debt securities and beneficiaries of Mortgage Guarantee Obligations issued by the GSEs (collectively "the Holders").[*]

Under the Agreements, following a payment default by a GSE with respect to any Holders, and in the event Treasury fails to perform its obligations to either of the GSEs in respect of any draw on the Commitments, those Holders may file claims in the United States Court of Federal Claims for relief requiring Treasury to pay the relevant GSE a specified amount (called "the Demand Amount") in the form of liquidated damages. After consultation with the Civil Division of the Department of Justice, we conclude that the United States Court of Federal Claims generally would have jurisdiction under the Tucker Act to entertain claims brought by the Holders for liquidated damages, payable to a GSE, according to the terms of the Agreements, if Treasury failed to perform its obligation under the Agreements to fund the Commitment in the event of a payment default by the GSE to the Holders. The general jurisdictional provision of the Tucker Act, section 1491(a)(1) of title 28 of the United States Code, authorizes the Court of Federal Claims "to render judgment upon any claim against the United States founded" on, among other bases, "any express . . . contract with the United States, or for liquidated . . . damages in cases not sounding in tort." A Holder's claim against Treasury for liquidated damages, payable to a GSE, under the Agreements falls within the general scope of section 1491(a)(1). It is established that the Court of Federal Claims has jurisdiction under section 1491(a)(1) to hear a breach of

---

[*] Any capitalized terms used but not defined in this letter opinion have the meanings set forth in the Agreements.

contract claim brought by a properly authorized party for payment of damages owed to a corporation. *See First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1293–94 (Fed. Cir. 1999). Accordingly, the Court of Federal Claims generally would have jurisdiction under this provision of the Tucker Act to hear such claims by Holders. Because the Tucker Act constitutes express statutory consent to the award of monetary relief against the United States, the sovereign immunity of the United States would not be a bar to any such claim. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("[T]he Tucker Act constitutes a waiver of sovereign immunity."); *Adair v. United States*, 497 F.3d 1244, 1250 (Fed. Cir. 2007) (Tucker Act "waives the government's sovereign immunity for these claims").

We therefore conclude that the Agreements, according to their terms, would create rights enforceable through actions brought in the Court of Federal Claims in accordance with the ordinary rules and procedures governing litigation in that Court.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*